## TOWN OF COLORADO CITY v. TOWNSEND.

1. EVIDENCE.

Proof of negotiations and propositions antecedent to the execution of a written agreement is inadmissible for the purpose of adding terms or conditions not expressed therein.

2. CONTRACTS.

The written contract by which the appellee agreed to furnish the appellant electric lights for the town provided that there should be no assignment of the contract without appellant's consent. The appellee sold his electric plant and it was removed, but he continued

to furnish light derived from some other source.  *Held,* that he was entitled to recover under his contract.

*Appeal from the District Court of El Paso County.*

On the 19th day of June, 1893, appellant and appellee made the following contract:

" For and in consideration of the sum of thirteen dollars ($13.00) per month for each arc light furnished to said party of the second part, the said party of the first part agrees to furnish lights, and to light the streets and parks of Colorado City by electricity, for the period of ten (10) years from the first day of October, 1893, with as many arc lights as said party of the second part shall require, not less than nineteen (19); said lights to be arc lights known as two thousand (2,000) candle power lights, such as are furnished to the said party of the second part.

" Said party of the first part further agrees to furnish additional lights in excess of the number of nineteen (19) as the city council of the party of the second part may require and demand, and also agrees to locate and maintain the lights so furnished at such points and in such places as the second party may direct, but no new lights furnished as aforesaid shall be located at a greater distance than two (2) blocks from the next adjoining light; and said second party agrees to pay to said party of the first part, for each additional light so furnished, the sum of thirteen dollars ($13.00) per month, said party of the second part hereby agreeing to accept said lights of the above-mentioned power and kind for the period of ten (10) years, upon the terms and conditions herein named.   Said second party agrees to pay said first party on the 10th of each and every month at and after the rate of $13.00 per month for each arc light used the preceding month. Said party of the first part hereby agrees to turn on the light so furnished at a time not more than one hour after sunset in each day, and reserves the right to turn off said lights at not earlier than one hour before sunrise in each day.   It is further agreed that said party of the first part may assign and trans-

fer all his rights, or any portion of the same, in this contract, to any individual or electric light company hereafter to be formed, upon consent of said party of the second part, upon the condition that said assignee shall agree to conform to all the conditions, terms, and reservations of this contract. The said party of the first part further agrees that if, at any time during the term of this agreement, it shall become a well-known, fixed and established fact in electric lighting, that electricity for the purpose of arc lighting can be distributed by other and less costly processes than those at present known to be practicable, and as a proper and legitimate method, fully developed and in general use, then in such case said party of the second part may demand from said party of the first part, or his assigns, such modifications of this contract as shall give said second party an equitable benefit arising from such new process. Such demand for modification of this contract shall be made in writing by said party of the second part, and in case said parties hereto shall not be able to agree as to the terms, conditions and modifications hereof, the same shall be submitted to three (3) arbitrators, one arbitrator to be chosen by each party hereto, and the two so chosen shall choose a third. The finding of such arbitrators so named to be final and conclusive on each party as to all matters submitted to them."

On December 8, 1894, appellee brought suit to recover $1,235 and interest; alleging nonpayment of $247 each month for the months of June, July, August, September, and October, 1894; alleging full compliance by him with the terms of the contract.

Appellant answered, denying any indebtedness; that appellee had complied with his contract,—and denied that appellee had furnished any lights after the 1st day of June, 1894, and added the following special defenses:

" (1) That on the 10th day of June, 1893, said O. C. Townsend entered into a contract with defendant, and agreed to erect an electric light plant at the glass works, and to light the defendant town from said plant, for a period of ten years, at thirteen dollars per light per month.

" (2) That said plaintiff did, under said contract, erect an electric light plant, procured a franchise from said town, and erected poles, wires, and arc lights, and began to furnish lights and light said town, and continued so to do until about the 22d day of May, 1894, when said plaintiff took out his plant, removed it from said town, took down his wires, poles, and lights, and put it out of his power to fulfill said contract.

" (3) That after said contract was entered into, on, to wit, the 19th day of June, 1893, plaintiff and defendant made a supplementary agreement for the government of the proposed electric light company which said plaintiff represented he was about to form, and which is the alleged contract set forth in plaintiff's complaint. And for a second and further answer defendant says that on or about the 22d day of May, 1894, the plaintiff transferred his right to light the said defendant town to The El Paso Electric Company, a company formed and in existence on or before June 19, 1893, without the consent and against the protest of this defendant, and as soon as the said transfer became known to this defendant, to wit, on or about the —— day of June, 1894, said plaintiff, his successors, attorneys, and agents, were, and have been many times since, notified to furnish no more lights, and to do nothing whatsoever under said contract, and that said contract was wholly rescinded. The defendant further says that the alleged contract was made with the plaintiff for the sole purpose of establishing a local and home industry, as the plaintiff well knew, and that in order to induce the plaintiff to establish the said electric light plant, and make it a substantial and permanent institution, the defendant agreed to pay him (the said plaintiff) a large sum of money in excess of what other companies, located at Colorado Springs and elsewhere, would have furnished them for; and all this the plaintiff well knew, but, disregarding the spirit and letter of the contract, he, on or about the 22d day of May, 1894, removed the said plant, together with all the poles, wires, and all other appliances necessary to supply the said lights to the defendant town, and assigned his right to the contract to The El Paso Electric Light Company, as aforesaid."

The case was tried to the court on the 27th and 28th days of February, 1895. The court found for the plaintiff (appellee). A motion for a new trial was made and overruled, and judgment entered for $1,272.50, and exception taken, and an appeal to this court.

Mr. JOHN R. WATT and Mr. O. F. INGRAHAM, for appellant.

Messrs. VANATTA & CUNNINGHAM, for appellee.

REED, P. J., delivered the opinion of the court.

There are several errors assigned, some of which are not sufficiently specific to notify the court of what counsel complain. The third, fifth, sixth, seventh, eighth, and ninth are of this character,—so general that they fail to designate anything. The first and fourth are to the effect that the court erred in excluding evidence of the negotiations of the parties prior to the making of the written agreement, and also erred in not considering the negotiations and conversations that occurred before the making of the agreement. The second, that the court erred in refusing to allow appellant to prove that The El Paso Electric Company offered to furnish the lights, under a contract of the same kind, at $10.00 per light. The eighth, to the effect that the court erred in awarding a judgment to the appellee, because " the record shows that appellee assigned his contract to The El Paso Electric Light Company without the consent of appellant." These are the only assignments of error that need be noticed, and some of them can be very summarily disposed of.

The testimony offered and refused, upon which the first and fourth assignments were based, in regard to negotiations and conversations between the parties preceding the making of the contract, was, according to a well-settled and universal rule of law, clearly inadmissible. The agreement reached by the parties was embodied in the written contract. What, in

the way of bargaining, that preceded, was of no importance whatever.

The second assignment may be disposed of equally as summarily. It may have been the duty of the officers of appellant to have accepted the offer of The El Paso Electric Company at $10.00 per light; but failing to accept, and contracting to pay appellee $13.00 for each light, we cannot conceive how evidence of the offer at $10.00 could affect appellee's right to recover the amount appellant had agreed to pay. If the testimony had been admitted, its only effect could have been to convict appellant of a want of business sense, or of fraud.

The only question of legal importance is that presented by the eighth assignment of error,—that the court erred in finding for appellee, because he had assigned his contract without the consent of appellant. The contract clearly provides that there can be no assignment without the consent of appellant. The testimony shows that appellee appeared before the board, produced an assignment that he proposed to execute, assigning his contract to The El Paso Electric Company, and asked consent to make the transfer, which was refused, and he notified that he would be required to furnish no more lights. There is no evidence that he made any transfer of his contract, or that any one else was substituted in his stead, or attempted to be, or succeeded him. He had sold out his plant, and it had been removed. By reference to the contract, it will be seen that there was no provision that appellee should erect and maintain a plant for generating electricity. Such may have been the intention of appellant, but it was not expressed by the contract. He was to light the town as specified. There is no allegation of failure to perform. It is true that it was averred in the answer that he had sold out his machinery, and made it impossible to generate the electricity in the town; but that did not disqualify him from complying with the contract, and furnishing electricity from another source, which it appears he did. It is not alleged nor shown that, by reason of anything done by appellee, appel-

lant had to supply and pay for lights from another. It appears that appellee had contracted with The El Paso Electric Company to supply him with electricity at Colorado City to continue his contract, and that he, in person, was complying with the contract by means of the contract made by him with the El Paso Company. The appellant having failed to establish by the evidence any legal defense to the action, the judgment of the district court must be affirmed.

*Affirmed.*